1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

EDGAR MARTINEZ,

                                    Petitioner,

                vs.

K. HOLLAND, Warden,

                                    Respondent.

Civil No.    13cv3007-GPC (WVG)

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

17      This Report and Recommendation is submitted to United States District Judge Gonzalo

18  P. Curiel pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States

19  District Court for the Southern District of California.

20                                    **I.**

21                           **FEDERAL PROCEEDINGS**

22      Edgar Martinez (hereinafter "Petitioner"), is a state prisoner proceeding pro se and in

23  forma pauperis with a First Amended Petition for a Writ of Habeas Corpus pursuant to 28

24  U.S.C. § 2254.  (ECF No. 9.)  Petitioner was convicted by a San Diego County Superior Court

25  jury of robbery, assault with a firearm, making a criminal threat, burglary, and grand theft of a

26  firearm.  (Lodgment No. 1, Clerk's Tr. ["CT"] at 332-36.)  The jury also found that Petitioner

27  personally used a firearm during the commission of all five counts.  (Id.)  He was sentenced to

28  fifteen years in state prison, which consisted of the upper term of five years on the robbery count

1   plus a ten-year term for the gun use enhancement on that count; concurrent terms were imposed

2   on the remaining counts and on their gun use enhancements.  (CT 339.)

3       Petitioner alleges here, as he did in state court, that his federal constitutional rights were

4   violated because trial counsel provided ineffective assistance in plea bargaining (Claim 1), and

5   the upper term sentence was imposed based on aggravating factors found by the judge rather

6   than the jury, trial counsel provided ineffective assistance in failing to object to the sentence, and

7   appellate counsel provided ineffective assistance in failing to raise the claims presented here on

8   appeal (Claim 2).  (First Amended Petition ["FAP"] at 5, 8-20.[1])

9       Respondent has filed an Answer ("Ans.") to the Petition along with an incorporated

10  Memorandum of Points and Authorities in support ("Ans. Mem."), and has lodged portions of

11  the state court record.  (ECF Nos. 10-12.)  Respondent argues that federal habeas relief is

12  unavailable because the adjudication by the state court of Petitioner's claims did not involve an

13  objectively unreasonable application of clearly established federal law.  (Ans. at 2; Ans. Mem.

14  at 4-8.)  Petitioner has filed a Traverse.  (ECF No. 13.)

15      For the following reasons, the Court finds that Petitioner is not entitled to habeas relief

16  because the adjudication of his claims by the state court is neither contrary to, nor involves an

17  unreasonable application of, clearly established federal law, and is not based on an unreasonable

18  determination of the facts.  The Court also finds that any sentencing error is harmless.  The Court

19  therefore **RECOMMENDS** the Petition be **DENIED**.

## II.

## STATE PROCEEDINGS

22      In a five-count amended Information filed in the San Diego County Superior Court on

23  March 16, 2011, Petitioner was charged with robbery in violation of California Penal Code

24  section 211, assault with a firearm in violation of Penal Code section 245(a)(2), making a

25  criminal threat in violation of Penal Code section 443, burglary in violation of Penal Code

26  section 245(a)(2), and grand theft of a firearm in violation of Penal Code section 487(d)(2).  (CT

27

28      [1]  When citing to documents filed with the Court's Electronic Case Filing ("ECF") system, the Court will refer to the pages assigned by that system.

53-57.)  The amended Information also alleged that Petitioner personally used a firearm during all of the offenses and committed the offenses while on felony probation.  (Id.)  On March 24, 2011, Petitioner was convicted on all five counts in a jury trial with the jury returning true findings on all of the firearm use allegations.  (CT 332-36.)  On September 9, 2011, Petitioner was sentenced to fifteen years in state prison.  (CT 339.)

Petitioner's appointed appellate counsel filed an appeal raising a single claim, which is not presented here, challenging the admission of an accomplice's police statement.  (Lodgment No. 3.)  Petitioner contemporaneously filed a pro se habeas petition in the state appellate court raising the claims presented here.  (Lodgment No. 9.)  The state appellate court, in separate opinions, affirmed the conviction and denied habeas relief.  (Lodgment Nos. 6, 10.)  A petition for review presenting the claim which was raised on appeal was summarily denied by the California Supreme Court.  (Lodgment Nos. 7-8.)  Petitioner filed a pro se habeas petition in the state supreme court raising the same claims presented here, which was summarily denied without a statement of reasoning or citation of authority.  (Lodgment Nos. 11-12.)

## III.

## FACTUAL BACKGROUND

The following statement of facts is taken from the appellate court opinion affirming Petitioner's conviction on direct review.  This Court gives deference to state court findings of fact and presumes them to be correct.  Sumner v. Mata, 449 U.S. 539, 545-47 (1981).

A. *The People's evidence*

1. *The robbery and the related offenses*

In July 2010, Matthew Atencio worked at Super Canna, a medical marijuana dispensary located in San Diego.  On July 6, at around 11:00 a.m., a man who Atencio later identified as Martinez entered the dispensary.  Martinez looked at some marijuana, said he did not want anything because he was in a hurry, and left.

After Martinez left, Atencio noticed that his cell phone was missing.  A short time later, Martinez called the dispensary using Atencio's cell phone.  Martinez apologized to Atencio and explained that he had taken Atencio's cell phone by mistake, thinking that it was his.  About five minutes later, Martinez returned to the dispensary with Atencio's cell phone.  Martinez said that he wanted to look at the marijuana one more time.

As Atencio was weighing some marijuana that Martinez had selected, he felt a gun against his neck. He looked in Martinez's direction. Martinez said, "Don't look at me. Look at the ground." Martinez forced Atencio to lie face down in a corner of a small nearby "grow room." Martinez then opened the door and let some other people into the dispensary. After a while, Martinez escorted Atencio into the dispensary's office. Martinez was still pointing a gun at Atencio. Martinez asked Atencio if he had any weapons. Atencio replied that there was a shotgun in the office, and handed the gun to Martinez.

Martinez also told Atencio that if he contacted the police or tried to get Martinez in trouble, Martinez would find Atencio's family, kill them, and kill Atencio. Atencio begged Martinez not to kill him. Martinez said, "You're not going to call the police, right, if I don't shoot you?" Atencio promised Martinez that he would not call the police. Martinez said, "Well, you don't call the police, and I won't come find you. And I'm going to take this ID to make sure." Martinez took Atencio's wallet and left.

After the incident, Atencio looked through the dispensary to see what had been taken. Atencio discovered that a television set, a few laptop computers, a video game console and some games, approximately six pounds of marijuana, a shotgun, and a taser were among the missing items.

2. *The investigation*

Video cameras located outside the dispensary captured portions of the robbery. The video recording revealed that the vehicle used in the robbery appeared to be a forest green Ford F–150 truck with an airbrush design on the tailgate. Three days after the robbery, on July 9, 2010, a police officer saw a similar truck traveling on a highway. The officer stopped the truck and detained the driver, Brissa Floriano.

An officer transported Floriano to police headquarters. San Diego Police Department Detective Maria Estrella interviewed Floriano... Floriano told Detective Estrella that she had driven Martinez, who was her cousin, and his friend Emilio Marquez, to the dispensary on the day of the robbery. Floriano said that Martinez and Marquez entered the dispensary and stole some items from the establishment while Floriano remained in the truck.

Police arrested Marquez at a friend's house approximately a week later, and recovered a laptop that had been stolen from Super Canna inside the friend's house. Police arrested Martinez a few months later.

B. *The defense*

Martinez's mother testified that Martinez lived with her at the time of the robbery. Martinez's mother maintained that although Martinez had left the house at various points during the day in question, he was never gone for more than a half hour. Martinez's mother had not seen any suspicious items in her house after the robbery.

(Lodgment No. 6, <u>People v. Martinez</u>, No. D060559, slip op. at 2-4 (Cal.App.Ct. Jul. 11, 2012).)

/ / /

**IV.**

**<u>PETITIONER'S CLAIMS</u>**

(1)  Petitioner's right to the effective assistance of counsel under the Sixth and Fourteenth Amendments was violated because he would have accepted a plea offer of ten years and eight months but for trial counsel's deficient advice regarding the strength of the case and his sentence exposure, and by counsel's failure to negotiate a better plea bargain.  (FAP at 5, 8-13.)

(2)  Petitioner's right to a jury trial under the Sixth and Fourteenth Amendments was violated because an upper term sentence was imposed based on aggravating factors found by the trial judge rather than the jury, and his right to the effective assistance of counsel was violated by trial counsel's failure to object to the sentence and appellate counsel's failure to raise the claims presented here on direct appeal.  (FAP at 5, 14-20.)

**V.**

**<u>DISCUSSION</u>**

For the following reasons, the Court finds that the adjudication by the state court of Petitioner's claims is neither contrary to, nor involves an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts.  The Court also finds that any sentencing error was harmless.  The Court therefore **RECOMMENDS** the Petition be **DENIED**.

**A.**    **Standard of Review**

Because the claims presented here were adjudicated on their merits in the state court, in order to obtain federal habeas relief, Petitioner must first demonstrate that the state court adjudication of the claims: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C.A. § 2254(d) (West 2006).

A state court's decision may be "contrary to" clearly established Supreme Court precedent (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially

indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  A state court decision may involve an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case."  Id. at 407.  Relief under the "unreasonable application" clause of § 2254(d) is available "if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 572 U.S. ___, 2014 WL 1612424 at *8 (Apr. 23, 2014), quoting Harrington v. Richter, 562 U.S. ___, 131 S.Ct. 770, 787 (2011).

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United States Supreme] Court's decisions . . ." Williams, 529 U.S. at 412.  In order to satisfy section 2254(d)(2), a federal habeas petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming it rests upon a determination of the facts, are objectively unreasonable.  Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

**B.    Claim 2**

The Court will begin by addressing Petitioner's sentencing claim because it informs the analysis of the plea bargaining claim, Claim 1, which will follow.  Petitioner alleges here, as he did in the state court, that the imposition of the upper term on count one based on facts which were found by the trial judge and not the jury, violated his right to a jury trial under the Sixth and Fourteenth Amendments as that right is articulated in Apprendi v. New Jersey, 530 U.S. 466 (2000) (holding that other than the fact of a prior conviction, any fact used to increase a sentence above the statutory maximum must be found by a jury beyond a reasonable doubt), and Blakely v. Washington, 542 U.S. 296 (2004) (holding that the statutory maximum for Apprendi purposes is the maximum sentence permitted to be imposed solely by the jury verdict or a defendant's

admission). (FAP at 5, 14-20.) Petitioner also alleges here, as he did in state court, that his trial counsel was deficient not only in failing to bring the provisions of <u>Blakely</u> and <u>Apprendi</u> to the trial court's attention, but in failing to challenge the efficacy of the factors relied on by the trial judge as well as the trial judge's weighing of those factors, and that his appellate counsel was deficient in failing to raise these claims on appeal. (<u>Id.</u>)

Petitioner was sentenced to the upper term of five years on count one, robbery, and received a ten-year consecutive enhancement for the jury's gun-use finding on that count, for a total term of fifteen years in prison. (Lodgment No. 2, Reporter's Tr. ["RT"] at 725-25.) The trial judge imposed the middle terms on the remaining counts, stating that "the real aggravating factor of this case is the robbery with a gun," and ordered those terms, along with the gun-use enhancement terms on those counts, to run concurrent. (<u>Id.</u>) The trial judge had discretion to sentence Petitioner on the robbery count to the low term (two years), the middle term (three years), or the upper term (five years), and indicated that in making the decision to impose the upper term he found a single mitigating factor, Petitioner's "de minimus" criminal history (a single prior felony conviction for possession of marijuana for sale), but found as aggravating factors: (1) Petitioner was convicted of multiple counts, (2) the victim was vulnerable, (3) it was a planned, sophisticated crime and Petitioner occupied a leadership role, (4) it was a very violent act which showed Petitioner could be a serious danger to society, and (5) it involved a great deal of merchandise, in excess of $20,000. (RT 724-25; CT 211.)

Petitioner presented Claim 2 to the state supreme court in his pro se habeas petition. (Lodgment No. 11 at 12-19.) The state supreme court summarily denied the petition without a statement of reasoning or citation of authority. (Lodgment No. 12.) Petitioner previously presented the same claim to the state appellate court in his pro se habeas petition. (Lodgment No. 9 at 5, 7.) The state appellate court denied the claim, stating:

> With respect to sentencing, Martinez contends that his attorney provided ineffective assistance in failing to argue that under *Blakely v. Washington* (2004) 542 U.S. 296 and *Apprendi v. New Jersey* (2000) 530 U.S. 466, the judge was required to "impanel... a jury to find aggravating or mitigating factors" before imposing an upper term sentence. Any argument that trial counsel might have made in this regard would have been entirely without merit in light of the 2007 amendments to the Determinate Sentencing Law, which were fully applicable at the time of Martinez's trial in March 2011. (Stats. 2007, ch. 3, § 2.) These

1    amendments permit a trial court to impose an upper term sentence without
2    violating *Blakely* or *Apprendi* and their progeny. (See *People v. Jones* (2009) 178
     Cal.App.4th 853, 866.)

3    (Lodgment No. 10, <u>In re Martinez</u>, No. D061989, order at 2 (Cal.App.Ct. July 11, 2012).)

4    Thus, the state appellate court denied the claim alleging the trial judge violated <u>Apprendi</u>

5    and <u>Blakely</u> on the basis that those cases no longer prohibit judicial factfinding with respect to

6    factors used to impose an upper term sentence, and denied the ineffective assistance of trial

7    counsel claim on the basis that it would have been futile for counsel to insist that the aggravating

8    factors be found by the jury.  With respect to these two aspects of Claim 2, this Court will look

9    through the silent denial by the state supreme court and apply the provisions of 28 U.S.C.

10   § 2254(d) to the appellate court opinion.  <u>See</u> <u>Ylst v. Nunnemaker</u>, 501 U.S. 797, 803-06 (1991)

11   ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained

12   orders upholding that judgment or rejecting the same claim rest upon the same ground.")

13   The appellate court did not address the ineffective assistance of appellate counsel claim.

14   With respect to that claim, this Court must presume that the silent denial by the state supreme

15   court was an adjudication on the merits of the constitutional claim presented, and must determine

16   what arguments or theories could have supported the state court's decision, and then "ask

17   whether it is possible fairminded jurists could disagree that those arguments or theories are

18   inconsistent with the holding in a prior decision of" the Supreme Court.  <u>Johnson v. Williams</u>,

19   568 U.S. ___, 133 S.Ct. 1088, 1095 (2013); <u>Richter</u>, 131 S.Ct. at 784-86.

20   In <u>Cunningham v. California</u>, 549 U.S. 270 (2007), the Supreme Court found that

21   California's three-tiered determinate sentencing law violated the right to a jury trial to the extent

22   it permitted a judge to impose an upper term sentence in the absence of an aggravating factor

23   which is established by the jury's verdict, a defendant's admission, or a prior conviction.  <u>Id.</u> at

24   288 ("In accord with <u>Blakely</u> . . . the middle term prescribed in California's statutes, not the

25   upper term, is the relevant statutory maximum.")  As the appellate court here noted, however,

26   the California Legislature amended California's Determinate Sentencing Law in 2007 in

27   response to <u>Cunningham</u>, well before Petitioner committed his offenses in 2010.  <u>People v.</u>

28   <u>Sandoval</u>, 41 Cal.4th 825, 836 n.2 (2007).  "Because of these amendments, trial courts now have

discretion under [California Penal Code § 1170(b)] to select among the lower, middle, and upper terms specified by statute without stating ultimate facts deemed to be aggravating or mitigating under the circumstances and without weighing aggravating and mitigating circumstances." People v. Jones, 178 Cal.App.4th 853, 867 (2009), citing Sandoval, 41 Cal.4th at 847. "[A] trial court is free to base an upper term sentence upon any aggravating circumstance that the court deems significant, subject to specific prohibitions." Sandoval, 41 Cal.4th at 848 (noting that a fact underlying an enhancement may not be used to impose the upper term unless the court strikes the enhancement, and any fact that is an element of a crime may not be used to impose an upper term).

The new sentencing law was "passed in response to Cunningham [and] provides that: 'when a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the choice of the appropriate term shall rest within the sound discretion of the court.'" Butler v. Curry, 528 F.3d 624, 631 n.5 (9th Cir. 2008), quoting California Penal Code § 1170(b) (2007).  Because the trial judge here had discretion to impose the upper term without finding aggravating factors, there was no violation of Petitioner's federal constitutional rights when the judge selected the upper term based on facts which were not found by a jury beyond a reasonable doubt. See United States v. Booker, 543 U.S. 220, 233 (2005) ("For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the fact that the judge deems relevant.")  However, even if a Sixth Amendment violation occurred as a result of the imposition of an upper term sentence, federal habeas relief is not available if the error was harmless.  Butler, 528 F.3d at 648.  In conducting a harmless error analysis, relief is only appropriate if the Court is "in 'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt."  Butler, 528 F.3d at 648, quoting O'Neal v. McAninch, 513 U.S. 432, 436 (1995).

The trial judge here explained why he had selected the upper term on count one:

> Looking at mitigating factors, the only mitigating factor is the defendant's lack of criminal history.  I accept the fact that, overall, he has a prior 11359 but pretty de minimus when you look at the serious nature of this particular crime. [¶] I accept the representation that his family has made that he's a good person.  But I'm not here to judge whether or not he's a good person.  I'm here to determine what that the appropriate penalty is for the crime that he has lawfully been

convicted of by 12 good people from the community.

I do note they convicted him of multiple counts.  That's a part of the aggravating factors.  I'm not going to throw in the gun since he's going to be sentenced on the gun.  I'm not using that as an aggravating factor.

The victim was very vulnerable.  These types of dispensaries are, you know, open game for and crimes of opportunity for people who want to steal money, product, anything else.  That's what we have here.  It was a fairly sophisticated type of crime.  Also, the defendant did occupy a position of leadership during this crime.

As I indicated, there was – I wouldn't say professionalism.  But it was certainly planned, and it was violent.  It was a very, very violent act and the type that shows the defendant can be a serious danger to society.

Also, as an aggravating factor, the fact is that a great deal of merchandise: shotgun, flat-screen TV, taser, laptops.  All of this taken was in excess of $20,000.  Again, an aggravating factor.

Based on weighing aggravating and mitigating factors, the court chooses the upper term of 5 years.  Consecutive to that will run 10 years consecutive on the gun enhancement.  Under 12022.53(B), prison term 15 years.  4 year term on the 12022.5 is stayed per 654.

(RT 724-25.)

Rule 4.421 of the California Rules of Court governs the circumstances in aggravation which justify an upper term.  As applicable here, California Rules of Court, Rules 4.421(a) and (b), at the time of sentencing, stated the following is a circumstance in aggravation:

(a) Factors relating to the crime, whether or not charged or chargeable as enhancements include that:

. . . .

(2)   The defendant was armed with or used a weapon at the time of the commission of the crime;

(3)  The victim was particularly vulnerable;

(4) The defendant induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission;

. . . .

(6) The defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process;

(7) The defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed;

(8) The manner in which the crime was carried out indicates planning,

sophistication, or professionalism;

(9) The crime involved an attempted or actual taking or damage of great monetary value;

. . . .

(b) Factors relating to the defendant include that:

(1) The defendant has engaged in violent conduct that indicates a serious danger to society;

. . . .

(4) The defendant was on probation or parole when the crime was committed; and

(5) The defendant's prior performance on probation or parole was unsatisfactory.

Cal. R. Ct. 4.421(a)-(b) (West 2011).

The trial judge indicated that he did not rely on Rule 4.421(a)(2), use of a weapon, despite the fact that the jury found Petitioner had been armed during the commission of the offenses. See Sandoval, 41 Cal.4th at 848 (noting that a fact underlying an enhancement may not be used to impose an upper term unless the court strikes the enhancement). The trial judge did, however, rely on Rule 4.421(a)(3), the existence of a particularly vulnerable victim. The Ninth Circuit in Butler declined to conclude that the victim was particularly vulnerable where the only evidence of vulnerability was that the victim was attacked from behind. Butler, 528 F.3d at 649 ("In the overwhelming majority of cases, 'particularly vulnerable victims' have had inherent personal characteristics that, sometimes in combination with the manner in which the crime was committed, render them more vulnerable than other victims.") The Ninth Circuit has also noted, with respect to a victim who was recovering from surgery, was unable to walk or stand because he was changing the dressing on his leg, and was attacked in the early morning in an isolated place without any warning, that:

> We recognize that, following Cunningham, the California Supreme Court cautioned reviewing courts when it comes to concluding there was harmless error due to the existence of aggravating circumstances that were not presented to the jury. For example, whether a victim was *particularly* vulnerable may entail a subjective assessment of the circumstances rather than a straightforward finding of facts. . . . [¶] Unlike Sandoval and Butler, this is a case that offers a clear-cut, obvious, and indisputable instance of victim vulnerability. Had the government presented to the jury the question, "Was Mr. Booker a particularly vulnerable victim?," we conclude that the jury would have answered "yes." Because we are not in grave doubt as to whether the jury would have found the existence of an

aggravating factor, we conclude that any trial court error in imposing the upper term based on factors that were not presented to the jury was harmless.

Johnson v. Kane, 482 Fed.Appx. 227, 229-30 (9th Cir. 2012) (unpublished memorandum) (internal citations and quotation marks omitted).[2]

It is not clear whether the jury here, had they been asked, would have agreed with the trial judge that persons who work in marijuana dispensaries are by that very occupation particularly vulnerable.  Under California law, particularly "means in a special or unusual degree, to an extent greater than in other cases.  Vulnerability means defenseless, unguarded, unprotected, accessible, assailable, one who is susceptible to the defendant's criminal act."  People v. DeHoyos, 57 Cal.4th 79, 155 (2013).  The trial judge may have been correct to point out that marijuana dispensaries make an inviting target due to the nature of their business, but it is not obvious the jury would have agreed with the trial judge that that fact alone made the victim particularly vulnerable.  This is not a "clear-cut, obvious and indisputable instance of victim vulnerability."  Kane, 482 Fed.Appx. at 230.

The next aggravating factor applicable to Petitioner, listed in Rule 4.421(a), which was relied on by the trial judge, looks to whether Petitioner "induced others to participate in the commission of the crime or occupied a position of leadership or dominance of other participants in its commission."  Cal. R. Ct. 4.421(a)(4) (West 2011).  The evidence presented at trial supports a finding that had the jury been asked to determine if Petitioner occupied a position of leadership in connection to the crimes, they would have answered in the affirmative. The victim, a "bud tender" at a medical marijuana dispensary, testified that the dispensary consists of three very small rooms, a foyer open to the public, a room where the marijuana is displayed which is separated from the foyer by a window and a locked door, and an office.  (RT 212-15.)  The victim testified Petitioner entered the foyer and said he was a security guard who was in a hurry because he was late for work.  (RT 220-21.)  Petitioner was a new patient, and after the victim verified his medical recommendation through a computer, he "buzzed" Petitioner through the

---

[2] Unpublished Ninth Circuit decisions may be cited commencing with decisions issued in 2007. (See Ninth Cir. Rule 36-3.)  Although still not binding precedent, unpublished decisions have persuasive value and indicate how the Ninth Circuit applies binding authority.

locked door into the room where the marijuana was displayed.  (RT 220.)  Petitioner looked around but said he was in a rush and did not purchase anything; after Petitioner left, the victim noticed his cell phone was missing.  (RT 222-24.)  The victim said he knew Petitioner had taken his cell phone, so he called it from the dispensary phone; no one answered but Petitioner immediately called back, apologized for taking it, came back to the dispensary, held it up to the window so the victim could see it, and was "buzzed in" to the room with the marijuana.  (Id.)

The victim testified that Petitioner then selected some marijuana to purchase, and as the victim was weighing it, he felt a gun pressed to his neck; he started to look up but Petitioner told him to look at the ground, not at Petitioner.  (RT 224.)  Petitioner escorted the victim at gunpoint to a corner of the dispensary and made him crouch down; he told the victim that he was going to let some friends in and warned the victim not to try anything.  (RT 226.)  Petitioner opened the door and let someone in, and the victim heard items being taken; Petitioner asked the victim where he kept the cash and if there was any more marijuana.  (RT 226-30.)  The victim testified that Petitioner escorted him to the office holding the gun to his head, where he asked the victim if Petitioner's paperwork was on file, or if the victim had made any copies of Petitioner's records or identification, and was told no.  (RT 231-32.)  Petitioner asked if the victim had any weapons, and the victim pointed to a shotgun and a taser, which were taken by Petitioner.  (RT 232-33.)

Petitioner escorted the victim back to a corner, made him lie on the floor, placed a stool on top of him, and said, "if this stool moves, you're dead."  (RT 234.)  Petitioner told the victim that if he contacted the police he would find and kill the victim and his family.  (RT 233.)  After the victim begged Petitioner not to kill him and promised not to call the police, Petitioner took his wallet and said, "Well, you don't call the police, and I won't come find you.  And I'm going to take this I.D. to make sure."  (RT 233-34.)  A television set, three laptop computers, an X-Box, video games, a shotgun, a taser, and six pounds of marijuana were taken.  (RT 238.)

Brissa Floriano testified, pursuant to a plea agreement, that she drove Petitioner, who was her cousin, and Emilio Marquez, Petitioner's friend, to the marijuana dispensary in her truck at Petitioner's request, parked nearby, and waited while Petitioner and Marquez walked away.  (RT 325-31.)  Marquez came back carrying a trash can, which he put in the truck; he came back twice

more and placed a television, a duffel bag, an X-Box, and a shotgun in the truck.  (RT 332-47.)  After the third trip, Petitioner returned and they drove away; during the ride, Petitioner asked Marquez if he had taken the cash box, and he said no because it contained no money.  (RT 346.)

Thus, the evidence showed that Petitioner gained entry to the dispensary, looked around, took the victim's cell phone and used it as a pretext to re-enter, after which he held the victim at gunpoint while he let in his friend, who then took the stolen items to the truck where Petitioner's cousin, who he had asked to drive, was waiting.  The Court is not in grave doubt that had the jury been asked if Petitioner had occupied a position of leadership, they would have answered in the affirmative.

The same is true regarding at last two of the four remaining aggravating factors relied on by the trial judge, listed in Rule 4.421(a)(6)-(9) as: "(6) The defendant threatened witnesses, unlawfully prevented or dissuaded witnesses from testifying, suborned perjury, or in any other way illegally interfered with the judicial process; (7) The defendant was convicted of other crimes for which consecutive sentences could have been imposed but for which concurrent sentences are being imposed; (8) The manner in which the crime was carried out indicates planning, sophistication, or professionalism; and (9) The crime involved an attempted or actual taking or damage of great monetary value."  Cal. R. Ct. 4.421(a)(4) (West 2011).  The evidence clearly showed that Petitioner threatened the victim, even going so far as to take the victim's identification and threatening to kill his entire family if he identified Petitioner.  In addition, Petitioner was convicted of five separate counts, including robbery, assault with a firearm, making a criminal threat, burglary, and grand theft of a firearm.  (CT 53-57.)  Concurrent sentences were imposed on four of the five counts, at least one of which, the criminal threat count, the trial judge indicated could have been run consecutively.  (RT 726.)  Finally, there was no dispute that property with a great monetary value, over $20,000, was taken.  Even if it is unclear whether the jury would have found the crimes to have been planned, sophisticated and carried out with professionalism, or if the trial judge had erred in finding that the sentence on count three could have run consecutively, the Court is not in grave doubt that, if asked, the jury would have found that Petitioner threatened a witness and took property of great monetary value

within the meaning of Rule 4.421(a)(6) and (9).  Any error in imposing the upper term on the robbery count without submitting the aggregating factors relating to the crimes to the jury for determination beyond a reasonable doubt was clearly harmless.  See Butler, 528 F.3d at 648 (In conducting a harmless error analysis, relief is only appropriate if the Court is "in 'grave doubt' as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt."), quoting O'Neal, 513 U.S. at 436.  Because several aggravating factors relating to the crime support imposition of the upper term, the Court need not address the factors relating to Petitioner set forth in California Rule of Court Rule 4.421(b)(1), (4)-(5).

Petitioner also alleges ineffective assistance of counsel due to trial counsel's failure to bring the provisions of Blakely and Apprendi to the trial court's attention, failing to challenge the efficacy of the factors relied on by the trial judge, and failing to challenge the trial judge's weighing of those factors.  For ineffective assistance of counsel to provide a basis for habeas relief, Petitioner must demonstrate two things.  First, he must show that counsel's performance was deficient.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  Second, he must show counsel's deficient performance prejudiced the defense, which requires showing that "counsel's errors were so serious as to deprive [Petitioner] of a fair trial, a trial whose result is reliable."  Id.  To show prejudice, Petitioner need only demonstrate a reasonable probability that the result of the proceeding would have been different absent the error.  Id. at 694.  A reasonable probability in this context is "a probability sufficient to undermine confidence in the outcome."  Id.  Petitioner must establish both deficient performance and prejudice in order to establish constitutionally ineffective assistance of counsel.  Id. at 687.

"Surmounting Strickland's high bar is never an easy task."  Padilla v. Kentucky, 559 U.S. 356, 371 (2010).  "The standards created by Strickland and section 2254(d) are both highly deferential and when the two apply in tandem, review is 'doubly' so."  Richter, 131 S.Ct. at 788 (citations omitted).  These standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt."  Pinholster, 131 S.Ct. at 1398.  Federal habeas relief

1   functions as a "guard against extreme malfunctions in the state criminal justice systems," and

2   not simply as a means of error correction.  Richter, 131 S.Ct. at 786, quoting Jackson v. Virginia,

3   443 U.S. 307, 332 n.5 (1979).  "Representation is constitutionally ineffective only if it 'so

4   undermined the proper functioning of the adversarial process' that the defendant was denied a

5   fair trial."  Strickland, 466 U.S. at 687.

6        As quoted above, the state appellate court denied the ineffective assistance of counsel

7   aspect of the sentencing claim on the basis that: "Any argument that trial counsel might have

8   made in this regard would have been entirely without merit in light of the 2007 amendments to

9   the Determinate Sentencing Law, which were fully applicable at the time of Martinez's trial in

10  March 2011." (Lodgment No. 10, In re Martinez, No. D061989, order at 2.)  Petitioner is unable

11  to demonstrate deficient performance or prejudice as a result of his trial counsel's failure to

12  request a jury find the aggravating factors rather than the judge because, as set forth above, state

13  law at the time of his sentencing did not require a jury determination as to aggravating factors.

14  Thus, any such request would have been futile.  With respect to Petitioner's contention that

15  counsel was deficient in failing to challenge the trial judge's weighing of the sentencing factors

16  or the efficacy of the factors themselves, his trial counsel argued at length at the sentencing

17  hearing that the trial judge should impose the low term.  (RT 711-14.)  Counsel pointed out that

18  Petitioner was a young man with support from family, teachers and coaches who believed in him

19  and held positive opinions of his character, that his pre-crime conduct was exemplary, including

20  a citation from the White House for his volunteer work, all while recovering from a serious

21  injury which necessitated his learning to walk again, and that his conduct and manner during the

22  crimes was intended to minimize the trauma, damage and harm inflicted on the victim.  (Id.)

23  That was in addition to a new trial motion where counsel argued there was insufficient evidence

24  to support the gun-use enhancement because the gun was never recovered, and the victim, a

25  chronic marijuana user who admitted to being "stoned" during the robbery and during his trial

26  testimony, contradicted himself regarding the color of the gun, and was reluctant to say that he

27  was positive about whether he even saw a gun because he was reluctant to look at it during the

28  robbery and had assumed it was gun that had been pressed against his neck.  (RT 703-04; CT

272-80.)  Petitioner has not shown that counsel made any errors in connection to the sentencing hearing, much less that he "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Strickland, 466 U.S. at 687.

Furthermore, Petitioner was not prejudiced by trial counsel's failure to bring Apprendi and Blakely to the trial court's attention, or the alleged failure to properly argue that any or all of the aggravating factors relied on by the trial judge did not satisfy California Rule of Court Rule 4.421(a)-(b), for the reasons set forth above, namely, that sufficient evidence exists in the record to support several aggravating factors.  The trial testimony outlined above supporting the aggravating factors, coupled with counsel's argument that the lower term was appropriate and Petitioner's plea for leniency (RT 719-24), and with the trial judge's statement quoted above that he was imposing the upper term due to the nature of Petitioner's conduct even accepting the representation that Petitioner is a good person, clearly show that trial counsel's performance with respect to challenging the imposition of the upper term sentence did not undermine the proper functioning of the adversarial process to the point that Petitioner was denied a fair sentencing hearing.  Strickland, 466 U.S. at 687.  For the same reasons, appellate counsel's failure to raise the claims on direct appeal was neither deficient nor prejudicial.  See Turner v. Calderon, 281 F.3d 851, 872 (9th Cir. 2002) (explaining that the Strickland standard applies to claims of ineffective assistance of appellate counsel); Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982) (stating that an attorney's failure to raise a meritless legal argument does not constitute ineffective assistance); Gustave v. United States, 627 F.2d 901, 906 (9th Cir. 1980) ("There is no requirement that an attorney appeal issues that are clearly untenable.")

The Court finds that the state supreme court's silent denial of the ineffective assistance of appellate counsel claim aspect of Claim 2, and the state appellate court's opinion denying the remaining aspects of Claim 2, are neither contrary to, nor involve an unreasonable application of, clearly established federal law, and are not based on an unreasonable determination of the facts.  The Court also finds, to the extent a federal constitutional error arose from imposition of an upper term sentence based on facts found by a judge rather than a jury, any error was harmless.  The Court therefore recommends denying habeas relief as to Claim 2.

## C.     Claim 1

Petitioner alleges in Claim 1 that he received ineffective assistance of trial counsel in connection to plea bargaining.  (FAP at 5, 8-13.)  Petitioner alleged in the appellate court:

> After the preliminary hearing I appeared in court several times where the D.A. presented several plea-bargain offers.  Under the advice of my attorney we did not agree to any offer.  Finally, on the day of my jury selection the D.A. offered a plea-bargain of ten years.  I asked my attorney if he could try to get me a better offer, since I only had 1 prior conviction which was non-violent and because he had asked me before if I was willing to sign for 5 years.  He just sat there and told me it would get no better without even litigating with the District attorney for a better offer.  I asked him what the chances of impeaching the vicitm and my cousin who testified against me were, being that they were the only key witnesses.  He told me that when the jury found out my cousin was gang related and had signed an agreement with the D.A. stating that if she testified against me she would expose herself to no more than 3 years in prison, the jury would most likely believe she was just saying anything to get off easy.  So supposedly the chances were good to impeach her too.  Because of this and because he said he was ready we went ahead to trial.

> With the benefit of hindsight one can see that I received ineffective assistance of counsel during the plea-bargain stage and during my sentencing.  A violation of my constitutional right to competent counsel, which ultimately prejudiced my defense.  Had my attorney not failed to communicate terms and conditions of the plea-bargain offer that would have been favorable, of course I would have agreed to the more favorable outcome of the plea offer.

(Lodgment No. 9 at 4-5.)  The appellate court denied the claim, stating:

> Martinez alleges that his trial counsel "failed to communicate (the) terms and conditions of (a) plea-bargain offer that would have (been) more favorable" than the 15-year sentence that Martinez received after he was convicted at a jury trial.  However, Martinez fails to support this bare allegation with any explanation of facts that would justify relief.  Martinez states that "on the day of my jury selection the (district attorney) offered a plea-bargain of 10 years," and indicates that he discussed this offer with his attorney.  Martinez does not allege that his attorney failed to communicate any other plea offer.  Martinez also suggests that his attorney failed to attempt to negotiate a more favorable plea agreement with the prosecutor and overestimated the likelihood that Martinez would be acquitted, based on an irrational assessment of the evidence likely to be presented at trial.  However, Martinez fails to allege specific facts that would substantiate these allegations.  Accordingly, we conclude that Martinez has failed to adequately allege that his trial counsel provided ineffective assistance during plea bargaining.  (See *People v. Duvall* (1995) 9 Cal.4th 464, 474 ("'Conclusory allegations (in a petition for habeas corpus) made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' (Citation.)".)

(Lodgment No. 10, In re Martinez, No. D061989, order at 1-2.)

In his subsequent habeas petition filed in the state supreme court, Petitioner augmented his claim with his own declaration, which he also presents here, alleging that he was informed

by his trial counsel that the prosecution had offered a plea bargain of ten years and eight months, of which he would have to serve 85%, in exchange for a guilty plea, but decided not to accept the offer based on his counsel's representation that his maximum exposure if he went to trial was no more than twelve years at 85%. (FAP at 22-23.)  Petitioner went to trial and was sentenced to fifteen years at 85%, and alleges here, as he did in the state supreme court (but not the state appellate court), that if he knew he was going to "serve approximately 40 months more in state prison. . . it is without question I would have accepted the ten year, eight month plea offer." (Id.)  The state supreme court summarily denied the habeas petition without citation of authority or a statement of reasoning.  (Lodgment No. 12.)

Respondent contends that the state appellate court's opinion reasonably recognized that Petitioner had not alleged a violation of counsel's duty to communicate plea offers, and that the bare assertion that counsel could have tried harder to negotiate a more favorable plea offer is insufficient to establish deficient performance.  (Ans. Mem at 6.)  Respondent also argues that the silent denial of the claim by the state supreme court, which, unlike the appellate court, had before it Petitioner's declaration, was similarly reasonable because the veracity of Petitioner's contention that his counsel erroneously estimated his maximum exposure at twelve years is questionable due to his allegation in the appellate court petition that he should have been sentenced to thirteen years.  (Id. at 7.)  Respondent argues that at no point in the appellate court habeas petition does Petitioner express surprise at being sentenced to more than twelve years, and the self-serving, unsupported allegations made here and to the state supreme court are insufficient to warrant relief.  (Id.)  Finally, Respondent contends that even if true, counsel's miscalculation of the sentencing exposure is at most a "mere inaccurate prediction," which does not constitute ineffective assistance, which requires a showing of a "gross mischaracterization of the likely outcome of a plea bargain combined with . . . erroneous advice of the probable effects of going to trial." (Id.)

Applying the provisions of § 2254(d) to the state appellate court opinion, it is clear that federal habeas relief is unavailable because the appellate court opinion did not unreasonably apply Strickland.  Petitioner provided only a conclusory allegation that his trial counsel could

have done a better job negotiating a plea offer, and a conclusory allegation that counsel failed to communicate the terms and conditions of an offer. (Lodgment No. 9 at 4-5.) Speculative and conclusory allegations are insufficient to prove that counsel provided ineffective assistance. Blackledge v. Allison, 431 U.S. 63, 74 (1977); James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994).

However, Petitioner presented additional allegations in the state supreme court which were not presented to the state appellate court, namely, that trial counsel misrepresented Petitioner's maximum exposure at twelve years, and that Petitioner would have accepted an offer of ten years and eight months had he known he faced fifteen years rather then twelve. The appellate court did not address those allegations because they were not presented there, and this Court cannot look though the silent denial by the state supreme court to the appellate court opinion. Rather, absent any indication otherwise, this Court must presume that the silent denial by the state supreme court was an adjudication on the merits of the constitutional claim presented. Johnson, 133 S.Ct. at 1095; Richter, 131 S.Ct. at 784. When reviewing such a claim, this Court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of" the Supreme Court. Richter, 131 S.Ct. at 786.

Clearly established federal law provides that Petitioner's Sixth Amendment right to counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. ___, 132 S.Ct. 1376, 1384 (2012) ("During plea negotiations defendants are entitled to the effective assistance of competent counsel."), quoting McMann v. Richardson, 397 U.S. 759, 771 (1970); see also Missouri v. Frye, 566 U.S. ___, 132 S.Ct. 1399, 1408 (2012) ("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused.") The Supreme Court has held that the Strickland standard applies during plea negotiations, and "that counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgement.'" Burt v. Titlow, 571 U.S. ___, 134 S.Ct. 10, 17 (2013), quoting Strickland, 466 U.S. at 690. In order to establish prejudice,

Petitioner "must show the outcome of the plea process would have been different with competent advice." Lafler, 131 S.Ct. at 1384.  Because Petitioner rejected the plea offer, he "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." Id. at 1385.

The state supreme court may have reasonably rejected Petitioner's claim on the basis that under the facts alleged, even if true, it was not reasonably likely he would have accepted an offer of ten years and eight months had he known his exposure was fifteen years rather than twelve years.  Petitioner alleged in the state court that:

> After the preliminary hearing I appeared in court several times where the D.A. presented several plea-bargain offers.  Under the advice of my attorney we did not agree to any offer.  Finally, on the day of my jury selection the D.A. offered a plea-bargain of 10 years.  I asked my attorney if he could try to get me a better offer, since I only had 1 prior conviction which was non-violent and because he had asked me before if I was willing to sign for 5 years. He simply sat there and told me it would get no better without even litigating with the District Attorney for a better offer.

(Lodgment No. 9 at 4.)

The state supreme court could have reasonably found that trial counsel informed Petitioner that in counsel's opinion five years was a fair offer, but that the prosecution, after submitting several plea offers, would do no better than ten years, or as Petitioner states in his later declaration, ten years and eight months.  For the following reasons, the Court finds that the state supreme court could have accepted as true Petitioner's declaration that trial counsel misrepresented his maximum exposure at twelve years rather than fifteen years, and still reasonably found both that Petitioner's declaration presented insufficient evidence to overcome the strong presumption of competence of trial counsel, and that it was not reasonably probable that the three-year difference would have prompted Petitioner to plead guilty.  As Petitioner points out, even the probation officer recommended to the trial judge that the middle term be

imposed on count one.  (CT 211.)  His trial counsel asked the trial judge to impose the low term (RT 712), which would have resulted in the twelve-year sentence which Petitioner indicates his counsel told him was his exposure.

Thus, Petitioner's attorney argued for a sentence of twelve years (after seeking to strike the ten-year gun enhancement altogether), the probation officer recommended thirteen years, and the trial judge imposed fifteen years.  Because the differences between the predicted sentences and the actual sentence are not extreme, assuming the truth of Petitioner's allegation that trial counsel erroneously advised him that he would be exposed to twelve years if he went to trial rather than fifteen years, the state court's rejection of the claim that Petitioner would have accepted the plea offer but for counsel's erroneous exposure calculation is consistent with clearly established federal law.  See e.g. McMann, 397 U.S. at 770 ("That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.  Courts continue to have serious differences among themselves . . . both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to particular facts."); see also Doganiere v. United States, 914 F.2d 165, 168 (9th Cir. 1990) (holding that trial counsel's misrepresentation that petitioner would receive a sentence of not more than twelve years but he was sentenced to fifteen years, did not constitute ineffective assistance), citing Iaea v. Sunn, 800 F.2d 861, 865 (9th Cir. 1986) (holding that an inaccurate prediction of a sentence is not deficient performance unless the mistake constitutes a "gross mischaracterization of the likely outcome.")

Federal habeas relief functions as a "guard against extreme malfunctions in the state criminal justice systems," and not simply as a means of error correction.  Richter, 131 S.Ct. at 786.  Petitioner has not alleged an extreme malfunction in the state court in connection to his ineffective assistance in plea bargaining claim.  Rather, he has alleged that his counsel initially asked him if he would be interested in accepting five years, and then advised Petitioner against accepting an offer of ten years and eight months because if he went to trial the most he would received would be twelve years, three years less than that to which he was actually exposed, and

advised him regarding his chances of being convicted on the testimony of the getaway driver who was a gang member, had cut a deal with the prosecution, and was willing to testify against a family member.  Petitioner followed his counsel's advice, went to trial, was found guilty, and although he could have been sentenced to twelve, thirteen or fifteen years depending on whether a low, middle or upper term was imposed on count one, the trial judge imposed the upper term against the recommendation for the middle term by the assigned probation officer and over trial counsel's lucid and well-supported argument for the low term.

As set forth above, "[s]urmounting Strickland's high bar is never an easy task," Padilla, 130 S.Ct. at 1485, and the standards of Strickland and § 2254(d) "are both highly deferential and when the two apply in tandem, review is 'doubly' so."  Richter, 131 S.Ct. at 788 (citations omitted).  These standards are "difficult to meet" and "demands that state court decisions be given the benefit of the doubt."  Pinholster, 131 S.Ct. at 1398.  In light of the doubly deferential standards this Court must apply, the state supreme court's rejection of Petitioner's claim that his trial counsel deficiently advised him, and that he was prejudiced by losing the opportunity to accept an offer of ten years and eight months, is not contrary to, nor an unreasonable application of, clearly established federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Richter, 131 S.Ct. at 788; Pinholster, 131 S.Ct. at 1398; Padilla, 130 S.Ct. at 1485; Strickland, 466 U.S. at 687.  The Court therefore recommends habeas relief be denied as to Claim 1.

## VI.

## CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered denying the Petition.

**IT IS ORDERED** that no later than **June 9, 2014**, any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

/ / /

1    **IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the

2    Court and served on all parties no later than **June 23, 2014.**  The parties are advised that failure

3    to file objections with the specified time may waive the right to raise those objections on

4    appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez

5    v. Ylst, 951 F.2d 1153, 1156 (9th Cir. 1991).

6

7    DATED:  May 12, 2014

8

9    _____
     Hon. William V. Gallo

10   U.S. Magistrate Judge